UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH EUGENE EVANS,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_____________________________/

Case No. 08-13649

Avern Cohn
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 21, 24)**

# I. PROCEDURAL HISTORY

## A. Proceedings in this Court

On September 22, 2008, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Paul V. Gadola referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of Supplemental Security Income benefits. (Dkt. 3). This matter was reassigned to District Judge Avern Cohn on September 3, 2009. (Dkt. 5), and is currently before the Court on cross-motions for summary judgment. (Dkt. 21, 24).

B. Administrative Proceedings

Plaintiff filed the instant claims on January 27, 2004, alleging that he became unable to work on July 1, 1999. (Dkt. 14, Tr. at 49). The claim was initially disapproved by the Commissioner on October 29, 2004. (Dkt. 14, Tr. at 37-40). Plaintiff requested a hearing and on January 9, 2007, plaintiff appeared without counsel before Administrative Law Judge (ALJ) Kathryn D. Burgchardt, who considered the case *de novo*. In a decision by the Appeals Council dated January 26, 2007, the ALJ found that plaintiff was not disabled. (Dkt. 14, Tr. at 12-18). Plaintiff requested a review of this decision on February 2, 2007. (Dkt. 14, Tr. at 8). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 23, 2008, denied plaintiff's request for review. (Dkt. 14, Tr. at 3-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. ALJ Findings

Plaintiff was 54 years of age at the time of the most recent administrative hearing. (Dkt. 14, Tr. at 240). Plaintiff's relevant work history included approximately 6 years as a warehouse packer, cook, dock loader, and substance abuse counselor. (Dkt. 14, Tr. at 64). In denying plaintiff's claims, defendant Commissioner considered chronic pulmonary disease (COPD), depression, hepatitis C, and arthritis as possible bases of disability. (Dkt. 14, Tr.14).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since July 1, 1999. (Dkt. 14, Tr. at 14). At step two, the ALJ found that plaintiff's depression and chronic obstructive pulmonary disease were "severe" within the meaning of the second sequential step. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 14, at 15). At step four, the ALJ found that plaintiff could not perform his previous work as a substance abuse counselor, fast food cook and packager. (Dkt. 14, at 17). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 14, Tr. at 18).

B. ALJ Decision and Medical Evidence

The medical evidentiary record establishes that the claimant has the following severe impairments: depression and chronic obstructive pulmonary disease. Plaintiff's mental impairment was established by consultative psychiatric evaluation dated June 10,2004 by F. Qadir, M.D. Dr. Qadir provided a diagnosis of depression with a rating of 60 on the Global Assessment Function Scale. The scale indicates that a GAF of 51 to 60 is indicative of moderate symptoms such as a flat affect, circumstantial speech and or occasional panic attacks or moderate difficulties in social, occupational or school functioning such as having few friends and/or conflicts with peers or co-workers. Dr. Qadir noted objective findings including observations that plaintiff had depressed mood with constricted affect. In all other aspects of the clinical evaluation plaintiff appeared normal. He had no suicidal or abnormal thoughts. However, he complained about difficulty sleeping.

The State agency consulting psychiatrist, Oahia Yousuf, M.D., advised that plaintiff had moderate difficulties maintaining concentration, persistence or pace, but no limitations in any other functional area. He reported, that in his opinion, plaintiff "appeared to be capable of performing simple, unskilled tasks on a sustained basis. Updated medical source records concerning plaintiff's mental health care show that he was evaluated on August 24, 2006 and that his condition

was assigned a GAF rating of 51-60, which reflected moderate symptoms and moderate limitations in social or occupational functioning. The medical records show that plaintiff did better when he was in regular treatment and taking medications along with talk therapy. In evaluating all the evidence, the ALJ accepted the State agency assessment of the claimant's mental residual functional capacity and found that plaintiff had no restriction in the performance of activities of daily living, no difficulties in maintaining social functioning and moderate difficulties maintaining concentration, persistence or pace. The ALJ found no evidence of episodes of decompensation. Likewise, the ALJ found no evidence of the presence of the "C" criteria for disability under listing 12.04 for affective disorders or 12.06 for anxiety.

Plaintiff's COPD was established by consultative physical evaluation on July 3, 2004 as well as treating source medical records. Chest X-rays show no active pulmonary disease. However, plaintiff's long history of smoking cigarettes was noted at the consultative evaluation. Additionally, plaintiff was noted to be taking inhaler medication including steroids and Albuterol with nasal spray. Treating source medical records document plaintiff's experience with the symptoms of COPD including wheezing and rhonchi.

Plaintiff also complained about arthritis. Medical records document physical findings on examination in 2002 including muscle spasms. However, this

examination was after plaintiff was in a motor vehicle accident. The ALJ found no diagnostic evidence of structural damage or degeneration of the cervical, thoracic or lumbar spine. Moreover, there was no documentation of ongoing medical treatment for a disorder of the back or other musculoskeletal disorder. A consultative physical evaluation on July 3, 2004 failed to reveal any specific objective findings to support the extent of limitations described by plaintiff. Accordingly, the ALJ found that the alleged arthritis was not a severe impairment.

Plaintiff also complained about hepatitis C, a liver disease. The ALJ found no indication of any acute symptoms associated with this diagnosis. It was not discussed in the most recent consultative physical evaluation report. Accordingly, the ALJ found that hepatitis C was not a severe impairment.

Plaintiff testified that he was able to sit for three to four hours at a time, stand for a half an hour at a time and walk three to four blocks without stopping. He indicated that he could lift up to one gallon milk on a repetitive basis although he occasionally could lift up to 75 pounds. He had no problems using his upper extremities for manipulation. Plaintiff described his activities of daily living at the hearing. The ALJ inferred from the description that plaintiff remained very active during the day and that he had few restrictions. Plaintiff testified that he lives in a single family home with his parents. He gets up early every day. He eats, bathes, does chores and washes the laundry. The chores include watering the flowers,

running the vacuum cleaner across the floor, loading the dishwasher and cutting grass. He stated that he watches television and reads. He indicated that he has a driver license but uses public transportation. He likes to sing, garden, and go fishing. He exercises by walking daily. He smokes 10 to 15 cigarettes per day. He visits family daily. He lives with his parents and does not go out except to church, to the movie and at least twice each week, to the library. After considering the evidence of record, including plaintiff's testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. The ALJ placed significant weight on the assessment of the plaintiff's mental residual functional capacity by the State agency consultant. The ALJ found his assessment to be consistent with the record as a whole and uncontradicted by any treating source medical opinion.

Plaintiff's past relevant work was as a substance abuse counselor, fast food cook, and packager. The vocational expert testified, and the ALJ agreed, that an individual with plaintiff's vocational profile and residual functional capacity would be unable to do his past relevant work. The ALJ concluded, therefore, that plaintiff was unable to perform his past relevant work.

The ALJ concluded that plaintiff's ability to perform work at all exertional

levels has been compromised by non-exertional limitations. The ALJ asked the vocational expert whether jobs exist in the Southeast Michigan regional economy for an individual with plaintiff's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of the factors the individual would be able to perform the requirements of representative occupations at the medium exertion level: 3,000 packaging jobs, 5,000 assembly jobs, and 5,000 machine operator jobs. The vocational expert further testified that the same individual could do the following jobs at the light exertion level: 5,000 machine tender jobs, 5,000 assembly jobs, 5,000 inspection jobs, 3,000 packaging jobs and 5,000 sales counter jobs. Based on the testimony of the vocational expert, the ALJ concluded, considering the plaintiff's age, education, work experience, and his RFC, that he was capable of making a successful adjustment to other work that exists in significant numbers in the regional economy and was not disabled.

C. Parties' Arguments

1. Plaintiff's claims of error

Plaintiff initially failed to file his motion for summary judgment in accordance with the Court's scheduling order. In response to an order to show cause, plaintiff filed both a response to the Commissioner's motion for summary judgment and a motion of his own. (Dkt. 23, 24). Plaintiff's claims of error with the administrative decision are not entirely clear. Plaintiff asserts that the

Commissioner erroneously sought summary judgment. Plaintiff also argues that unless discovery is permitted, he has been deprived of his substantive rights. He says that testimony needs to be perpetuated and apparently seeks discovery under the Freedom of Information Act and the release of certain information from the Court.

According to plaintiff's complaint, the appeals council failed in its evaluation process by not evaluating the total medical or mental capacity of plaintiff. (Dkt. 1, p. 3). He alleges that an MRI of his head injuries are essential to appeals council action. He also alleges that medical needs are accumulative with age and the RFC "lacks immediate use of non-skilled continued employment necessary to improve personal living conditions. *Id*.

The undersigned suggests that most of plaintiff's assertions are without merit on their face and are not appropriate requests for relief in the context of a Social Security disability appeal. The undersigned will examine whether the ALJ's decision is supported by the substantial evidence in the record in accordance with governing law.

2. Commissioner's counter-motion for summary judgment

The ALJ found that plaintiff retained the RFC to perform a limited range of unskilled work, excluding work that required more than three steps or exposure to changes of temperature or more than a low level of pollutants. (Tr.

16). The Commissioner argues that this conclusion is substantially supported by evidence from the record, and urges the Court to affirm the Commissioner's decision finding plaintiff not disabled.

## IV. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B. Governing Law

1. Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2. Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). The findings of a psychologist are relevant in establishing the existence and severity of a mental impairment, and a psychologist's evaluation of the disabling nature of a mental impairment need not be given less weight than that of a psychiatrist. *Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990).

C. Analysis and Conclusions

As noted earlier, if the Commissioner's decision is supported by substantial

evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld. After review of the record, I conclude that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to plaintiff's claim.

The ALJ's restrictions are well-supported by the available objective medical evidence of record. With respect to plaintiff's physical impairments, there is little, if any, evidence of any limitations in the record. Treatment records from Dr. Dubin consistently show that plaintiff's examinations were unremarkable, and that his medication controlled his arthritic pain and asthma well. (Tr. 101-04). By May 2002, Dr. Dubin observed that plaintiff was "[d]oing much better." He noted that plaintiff's hepatitis C, arthritis, and heel spur pain were improved. (Tr. 103). In November 2002, Dr. Dubin noted that plaintiff was "d[]oing fairly well." He prescribed Motrin and Robaxin for pain and noted some wheezing, based on plaintiff's asthma, but no real functional restrictions. (Tr. 103). The ALJ also recognized that plaintiff had a long history of smoking cigarettes, and had consistently used steroid medication and nasal sprays. (Tr. 15). Because the record reflected objective evidence that could cause the symptoms from COPD

alleged by plaintiff, including wheezing and rhonchi, the ALJ limited plaintiff to only clean environments, to account for any possible asthma-based difficulties he might have.

The only other objective clinical findings in the record (aside from negative chest X-rays and abdominal scans which were normal) come from a July 2004 consultative examination performed by Moises Alviar, M.D., an internal medicine specialist. Dr. Alviar observed normal hand dexterity, good grip in both hands, normal range of motion in the hands and wrists, normal gait, and normal range of motion in the spine and all other joints. (Tr. 123-24). Plaintiff was able to tiptoe, tandem walk, walk on his heels, squat, and bend down to his toes. (Tr. 123). Dr. Alviar observed no neurological deficits or abnormalities. (Tr. 124). These clinical findings support the ALJ's determination that plaintiff had no exertional restrictions.

The ALJ noted that while plaintiff complained of arthritis, the only medical evidence supporting his claim are 2002 findings of muscle spasms, but no documentation of ongoing treatment for a musculoskeletal problem is found in the record. (Tr. 15). Similarly, while plaintiff claimed that hepatitis C caused limitations, there is no record of acute symptoms associated with that disease. Thus, the ALJ properly found that neither arthritis nor hepatitis C were severe impairments.

Notably, in December 2005, plaintiff indicated his physical health was "pretty good," and that "all was well with him." (Tr. 167). And, at the hearing, plaintiff estimated that he could lift 50 to 75 pounds periodically. (Tr. 242-43). Thus, the ALJ's conclusion that plaintiff had no exertional or postural limitations and required only a limitation to clean environments is well-supported by the objective record, available medical opinion evidence, and plaintiff's own statements.

The undersigned agrees with the Commissioner that substantial evidence supports the ALJ's conclusion that plaintiff's treatment history and medical opinion evidence required only a limitation to simple, unskilled work requiring no more than three steps. Plaintiff's clinical records demonstrate that he responded well to medications and was essentially stable. Treating psychiatrist Dr. Yousuf repeatedly noted that plaintiff was behaviorally stable (Tr. 165, 167, 170, 171-72), and consistently found him to exhibit a normal mood with no evidence of depression or mania (Tr. 167, 168, 170). In addition, plaintiff consistently denied any symptoms, even when off his medication (Tr. 171), and often indicated that he was fine and had no particular issues to discuss in therapy. (Tr. 164, 165, 171). These clinical records clearly demonstrate that plaintiff's depression and anxiety were well-controlled. No treating mental source opined that plaintiff had any meaningful mental restrictions. Dr. Yousef, a reviewing physician, found that

plaintiff had a moderate limitation in the area of maintaining concentration, persistence, or pace, which he translated into an opinion that plaintiff was "capable of performing simple unskilled basis. " (Tr. 129, 141). The ALJ's RFC assessment is consistent with Dr. Yousef's opinion, and further limits plaintiff even to one to three step tasks. The undersigned agrees with the Commissioner that the ALJ reasonably relied on the only medical source available in the record that provided an opinion on plaintiff's mental limitations.

The undersigned suggests that the ALJ's RFC assessment is well-supported by the objective medical evidence of record and the available medical opinions of record. In addition, the ALJ thoroughly considered plaintiff's subjective claims of limitation in her credibility assessment. Plaintiff claimed at the hearing that he could only sit for three to four hours, stand less than one hour, and walk three to four blocks. (Tr. 242-43). The ALJ reasonably found that these claimed limitations were not credible in light of the record evidence. The ALJ's conclusion is also supported by plaintiff's admitted lack of restriction in his activities of daily living. (Tr. 16). Plaintiff reported that he went to church at least twice a month, and went to the library two to three times per week. (Tr. 246). He also did his own and his parents' laundry, watered flowers, vacuumed, mowed the lawn, and shoveled the walk when necessary. (Tr. 251-53). He stated that he watched television, read, went to the library, used the bus to get around, and liked to sing,

garden, and fish. (Tr. 244, 283, 292). Thus, the ALJ reasonably considered plaintiff's extensive activities of daily living in determining that he was less than credible. *See* 20 C.F.R. § 416.929(c)(3)(I); *Berry v. Comm'r of Soc. Sec.*, 289 Fed.Appx. 54, 56 (6th Cir. 2008) ("[The plaintiff's] ability to live independently and perform regular household activities belies her claim that she is totally disabled.").

The ALJ also considered plaintiff's type and use of medication. Plaintiff consistently reported no side effects, and that he was doing well. He also admitted that he no longer took pain medications, and that he had no side effects from his cortico-steroids. (Tr. 248-49). Thus, the ALJ reasonably found no evidence of disabling or seriously limiting pain or side effects. *See Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) ("The medical evidence reflected that appellant's impairments were controlled with medication and were not seriously disabling."). Given the lack of consistency between plaintiff's alleged limitations and those found in his reports to his doctors and the objective medical evidence, it was reasonable for the ALJ to conclude that plaintiff's extreme sitting, standing, and walking limitations were not credible. The undersigned finds no basis to disturb the ALJ's credibility determination, which are entitled to a high level of deference.

After review of the record, the undersigned concludes that the decision of

the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 20, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 20, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Theresa M. Urbanic, AUSA, and the Commissioner of Social Security, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Kenneth Eugene Evans, 5016 Greenway, Detroit, MI 48204.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov